UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3500-GHK (JCGx) | Date | August 9, 2013 |
|---|---|---|---|
| Title | *Joshua Fjeld v. Penske Logistics, LLC* | | |

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re:** Plaintiff's Motion for Class Certification [Dkt. # 60]

This matter is before us on Plaintiff Joshua Fjeld's ("Plaintiff") Motion for Class Certification ("Motion"). We have considered the arguments in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows.

**I.     Background**

Plaintiff Joshua Fjeld ("Plaintiff") filed this wage and hour class action against his former employer, Penske Logistics, LLC ("Defendant"). Defendant is a national logistics company that primarily helps its customers transport their products from warehouses or other points of origin to the customers' individual stores or other points of consumption. (Opp'n 2 n.1). Defendant provides logistics services to 16 customers in California, including Mission Foods, Big Lots, CVS, and Starbucks. On each account or operation, there is generally at least an Operations Supervisor or Dispatcher, who is primarily responsible for assigning drivers and trucks to routes to make deliveries, and a Senior Operations Supervisor, who supervises the Operations Supervisors. (*See* Blahnick Decl. ¶ 5). Many operations would also employ an Operations Manager to oversee larger operations. (Opp'n 4). Plaintiff was an Operations Supervisor/Dispatcher on the Rancho Cucamonga Big Lots account from June 2007 to July 2009 and again from December 2009 to November 2010.

Plaintiff contends that Operations Supervisors are misclassified as Administrators under California law. Based on this allegation, he asserts the following three claims: (1) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, 1194, and 1198; (2) failure to provide meal and rest periods in violations of Cal. Lab. Code §§ 226.7 and 512; and (3) violation of Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* He also seeks to represent the following class:

> All current and former employees in California of Penske Logistics, LLC, who held the position of Dispatcher, also known as "Operations Supervisor" for Penske Logistics, LLC's transportation services, who worked in excess of eight (8) hours in a day and/or

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3500-GHK (JCGx) | Date | August 9, 2013 |
|---|---|---|---|
| Title | *Joshua Fjeld v. Penske Logistics, LLC* | | |

forty (40) hours in a work week in the state of California at any time from January 26, 2008 to the present who were not paid overtime compensation for those excess hours, or who did not receive meal periods and rest breaks.

Plaintiff seeks to certify the class under Rules 23(b)(1)(A) and (b)(3).

## II. Discussion

### A. Legal Standard

A motion for class certification is governed by the requirements of Federal Rule of Civil Procedure 23. While we may generally accept the allegations in the complaint as true in determining class certification, we must consider the merits of plaintiffs' claims to the extent they overlap with the Rule 23 requirements, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011), 657 F.3d at 981, as "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)). "When considering class certification under Rule 23," we "must perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have been satisfied." *Ellis*, 657 F.3d at 980.

Here, Plaintiff seeks to certify a Rule 23(b)(1)(A) and (b)(3) Class. Accordingly, Plaintiff bears the burden[1] of establishing not only the requirement of (b)(1) and (b)(3), but the following prerequisite requirements under Rule 23(a):

(1) "the class is so numerous that joinder of all members is impracticable," Rule 23(a)(1);
(2) "there are questions of law or fact common to the class," Rule 23(a)(2);
(3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Rule 23(a)(3);
(4) "the representative parties will fairly and adequately protect the interests of the class," Rule 23(a)(4);

### B. Commonality

Rule 23(a)(2) requires Plaintiff to show that "there are questions of law or fact common to the class." These common issue or issues must be *material* to the resolution of the claims asserted and demonstrate that putative Class Members "suffered the same injury." *Gen. Tel. Co.*, 457 U.S. at 157. In *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), the Supreme Court explained that while a single common issue may suffice, it "must be of such a nature that it is capable of classwide resolution –

---

[1] This is the case even if the plaintiffs' "underlying claim ar[ises] under California law and employer b[ears the] burden of proving on merits that [the plaintiffs] were not misclassified as exempt under state law." *Marlo v. UPS*, 639 F.3d 942, 946 (9th Cir. 2011).

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3500-GHK (JCGx) | Date | August 9, 2013 |
|---|---|---|---|
| Title | *Joshua Fjeld v. Penske Logistics, LLC* | | |

which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Indeed, after *Dukes*, "what matters to class certification is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 2551 (internal quotation and alteration removed).

**1.  Misclassification Claim**

Under California law, the administrative exemption applies to any employee:

(a)  Whose duties and responsibilities involve . . . [t]he performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his/her employer's customers . . . .; and

(b)  Who customarily and regularly exercises discretion and independent judgment; and

(c)  Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge . . . .; and

(d)  Who customarily and regularly exercises discretion and independent judgment; and

(e)  Who is primarily engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(f)  Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

IWC Wage Order No. 9-2001.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3500-GHK (JCGx) | Date | August 9, 2013 |
|---|---|---|---|
| Title | *Joshua Fjeld v. Penske Logistics, LLC* | | |

Plaintiff contends that Operations Supervisors perform "no exempt tasks" because all tasks fail to meet both the "directly related to management policies or general business operations" and "discretion and independent judgment" requirements. (Reply 2). However, to the extent there is a sufficient showing that Operations Supervisors spend the majority of their time on – i.e., are "primarily engaged" in[2] – one task or one group of tasks, Plaintiff's contention can be more narrowly framed around those tasks, i.e., are those tasks exempt and whether, in performing those tasks, Operations Supervisors exercise discretion and independent judgment.

Here, there is a sufficient showing that (1) an Operations Supervisor's primary duty – i.e., one that the Operations Supervisor spends the majority of his or her time on – is to "assign drivers and trucks to routes to make [timely] deliveries based upon customer needs," (Mot. 1); and (2) the performance of this duty involves a substantially similar core set of tasks: assigning drivers to specific routes, ensuring that working equipment is available, and troubleshooting issues that arise while the drivers are en route. (*See* Fjeld Decl. ¶¶ 5, 6 (asserting that as an Operations Supervisor, his "job was to arrange deliveries from the Big Lots' warehouse to the Big Lots' various stores throughout California," e.g., assign drivers to various routes, assign certain vehicles to certain drivers, make changes to the schedule throughout the week as needed, arrange for temporary drivers or replacement trucks as needed, troubleshoot breakdowns or accidents when the drivers are en route, and make adjustments to the routes as necessary); Hanson Decl. ¶ 5 ("My primary job is to ensure that the trucking equipment is in working order and that all of the routes are assigned and completed each day."); Lopez Decl. ¶ 5 ("I spend the majority of each day dispatching drivers and making any necessary adjustments to their routes to ensure that customer needs are met in a timely manner."); Delariva Decl. ¶¶ 5, 6 ("I spent roughly half of my time coordinating our backhaul operation," which means arranging for drivers to pick up products from CVS's vendors and transport the products to CVS's warehouses, and another "25% of my day dealing with what is going on with the operation at that particular time," e.g., "taking calls from drivers who are out on the road"); Ortiz Decl. ¶ 5 ("I spent the majority of my time getting my team of 39 drivers set up for their routes as they come in."); Singh Decl. ¶ 6 "I spend the majority of my time processing the nights' deliveries – ensuring that all of . . . the trucks, routes, and drivers are set up and proceeding as planned" to ensure timely delivery.); Blahnick Decl. ¶ 7 ("I launch the drivers each day, making sure that there are not any issues with their trucking equipment, electronic devices, or paperwork.")). This, however, does not end the inquiry, as we must look to the relevant legal standard to determine whether this commonality is sufficient to generate common answers that would drive the resolution of this litigation as to the class.

---

[2] To be "primarily engaged" in exempt tasks means spending more than 51% of the employee's time on exempt tasks. *See Dunbar v. Albertson's, Inc.*, 141 Cal. App. 4th 1422, 1426 (Ct. App. 2006) (stating that to be exempt under the executive exemption, which requires employees to be "primarily engaged" in exempt tasks, the employee must "spend more than 51% of their time on managerial tasks in any given workweek.").

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3500-GHK (JCGx) | Date | August 9, 2013 |
|---|---|---|---|
| Title | *Joshua Fjeld v. Penske Logistics, LLC* | | |

As to the "directly related" requirement, the California Supreme Court recently explained that a task satisfies this requirement if it is both qualitatively[3] and quantitatively administrative. *Harris v. Superior Court*, 53 Cal. 4th 170, 181-82 (2011). Work is quantitatively administrative if it is "of substantial importance to the management or operations of the business." *Harris*, 53 Cal. 4th at 182. *Harris* instructs us to look to Federal Regulations former part 541.205(c) for guidance. *Id.* Part 541.205(c) states:

> As used to describe work of substantial importance to the management or operation of the business, the phrase 'directly related to management policies or general business operations' is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is 'directly related' to management policies or to general business operations include those [whose] work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

On the other hand, those who hold "run-of-the mill positions" and perform routine clerical duties, such as bank tellers, statisticians who only tabulate data, bookkeepers, secretaries, and clerks of various kind, do not perform work of "substantial importance" to the management or operation of a business.

---

[3] Work is qualitatively administrative if it is administrative in nature, and we must "consider the particular facts before [us]" and look to the relevant federal regulation, Federal Regulations former part 541.205(b), for guidance. *Harris*, 53 Cal. 4th at 190 ("Federal Regulations former part 541.205(b) discusses the qualitative requirement that the work must be administrative in nature."). Federal Regulations former part 541.205(b) states:

> The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. An employee performing such work is engaged in activities relating to the administrative operations of the business notwithstanding that he is employed as an administrative assistant to an executive in the production department of the business.

Thus, as to the qualitative component, the relevant inquiry is whether the work at issue "services" Defendant's business.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3500-GHK (JCGx) | Date | August 9, 2013 |
|---|---|---|---|
| Title | *Joshua Fjeld v. Penske Logistics, LLC* | | |

§ 541.25(c)(1), (3). Thus, as to the quantitative component, the question is whether the work at issue is closer to routine clerical duties, or whether it requires the employees to implement or execute any policies or operations specific to the employer's business.

As for the "discretion and independent judgment" requirement, the inquiry focuses on whether the work requires the employee to "merely appl[y] his or her knowledge in following prescribed procedures or in determining which procedures to follow" or to "compar[e] and evaluat[e] [the] possible courses of conduct, and [to] act[] or mak[e] a decision after considering various possibilities." *Nordquist v. McGraw-Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 563 (Ct. App. 1995).

Thus, in order to analyze both the "discretion and independent judgment" requirement and the quantitative prong of the "directly related" requirement in this case, we would need to know, for instance, the factors the Operations Supervisors take into account when assigning drivers to routes or in deciding what to do when issues arise while the drivers are en route. As to the assignment decision, a determination based solely on factors like seniority or driver availability likely suggests that the task is rote and more clerical in nature while a determination based on factors like knowledge of driver capabilities, compliance with Department of Transportation ("DOT") hours-of-service, and driver progress at a given time tend to suggests a higher-level, more discretionary and operation-critical, decisionmaking process. *Perine v. ABF Freight Sys, Inc.*, 457 F. Supp. 2d 1004, 1015-16 (C.D. Cal. 2006) (concluding that the dispatcher's task of coordinating driver pickups was administratively exempt, given that the decision of which driver to assign was based not on seniority, but on a combination of the size of the freight to be picked up, the drivers' progress and location at a given time, and DOT hour-of-service compliance, and thus, the task required the dispatcher to "plan" in a manner that directly impacted the business's operation and is depended on the dispatchers' "experience and instinct"). As to dealing with issues that arise en route, such as accidents or breakdowns, we would similarly need to consider what factors the Operations Supervisor takes into account in deciding whether to send out replacement drivers or vehicles and who should be sent. In other words, to conduct the relevant analyses, it's not enough to know *what tasks* the Operations Supervisors are performing, we also need to know *how* they are doing it. For there to be classwide answers on whether the relevant tasks are exempt, Plaintiff must make a threshold showing that the putative class members are performing the tasks in a substantially similar manner, e.g., by taking into account a similar set of factors.

Plaintiff, however, offers only evidence on how *he* performed the relevant tasks. For instance, he asserts that he assigned drivers based on seniority and did not monitor the drivers' DOT hours-of-service. (Fjeld Decl. ¶ 5; Fjeld Dep. 34:19-23). Other than the testimony of his former boss – who worked on the same account – Plaintiff makes no showing that other Operations Supervisors take into account the same factors. (Pruitt Dep. 35:4-37:4 (stating that when she was the Operations Supervisor on that account, she took into account seniority and driver availability when assigning drivers)). Plaintiff in fact acknowledged that he does not know the details of how any of Defendant's other accounts are operated. (Fjeld Dep. 91:7-18). Indeed, the declarations of other Operations Supervisors show that their assignment decisions are based on, *inter alia*, their evaluation of the drivers' capabilities,

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3500-GHK (JCGx) | Date | August 9, 2013 |
|---|---|---|---|
| Title | *Joshua Fjeld v. Penske Logistics, LLC* | | |

DOT hours-of-service compliance, driver location and progress, and remaining trailer space. (*See* Singh Decl. ¶¶ 5-6 (takes into account how the loads may be maximized and his knowledge of the drivers' capabilities); Hanson Decl. ¶ 5-6 (takes into account DOT compliance and pallet size); Lopez Decl. ¶ 5 (takes into account driver progress, location, DOT compliance, size of load, and remaining trailer space)). The differences in how Plaintiff claims he made assignment decisions and how other Operations Supervisors make assignment decisions would have a significant impact on the exemption analysis. Thus, an analysis based on Plaintiff's assertions would not generate common answers as to the class.[4]

Given the absence of any showing on how other Operations Supervisors perform the relevant tasks and Plaintiff's concession that he does not know the details of other operations, we cannot determine whether common answers can be generated as to the class. Indeed, based on what showing we do have from the other Operations Supervisors, it strongly suggests that dissimilarities within the class will preclude the generation of common answers. Accordingly, we conclude that Plaintiff fails to establish commonality as to his misclassification claim.

### 2. Meal and Rest Break Claim

Plaintiff contends that his meal and rest break claim presents a common question because the issue of whether an employer must clearly communicate to the employees their right to take breaks in order to adequately "provide" opportunities to take breaks under California law presents a question of law. The meal and rest break claim, however, is dependent on the misclassification claim – if Defendant did not misclassify Operations Supervisors, it would have no obligation to provide meal and rest breaks at all. Put another way, it doesn't matter if "providing" compliant breaks under California law requires an employer to communicate a lawful policy if Plaintiff cannot establish that the Operations Supervisors were misclassified as a class. Thus, absent the predicate misclassification claim, Plaintiff's common question on the meal and rest break claim cannot "drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551. Accordingly, to the extent Plaintiff has failed to establish commonality as to the predicate misclassification claim, the meal and rest break claim also cannot meet the commonality requirement.

### 3. UCL Claim

Plaintiff's UCL claim is derivative of his misclassification and meal and rest break claim. (Reply 3 n.1); *see also Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010). Accordingly, it cannot meet the commonality requirement.

## III. Conclusion

Based on the foregoing, Plaintiff's Motion is **DENIED**. This action shall proceed as Plaintiff's individual action only.

---

[4] Indeed, the discrepancy between Plaintiff's and other Operations Supervisors' experience would also likely raise typicality issues.

E-Filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3500-GHK (JCGx) | Date | August 9, 2013 |
|---|---|---|---|
| Title | *Joshua Fjeld v. Penske Logistics, LLC* | | |

**IT IS SO ORDERED.**

                                                                                     : 

Initials of Deputy Clerk    Bea